The appellant, Alphonso Lee Howard, was indicted for the offense of robbery in the first degree (§ 13A-8-41, Code of Alabama 1975), was convicted after a jury trial of the lesser included offense of robbery in the third degree (§ 13A-8-43), and was sentenced to eight years' imprisonment. *Page 290 
He appeals, raising one issue: the voluntariness of his confession.
The state's evidence showed that the appellant entered a gasoline service station and approached the attendant, Maxwell Vincent Ward; that with his hand under his shirt, he told Ward that he had a gun, that this was a "stickup," and that he did not want to shoot him; and that he demanded all the money. Ward, seeing what he thought was the impression of a gun under the appellant's shirt and believing that the appellant had a gun, gave the appellant seventeen $10 bills. The appellant then ran from the store and drove away in an automobile. Ward called the police, and the appellant was quickly apprehended nearby. He was taken back to the service station, where Ward identified him as the robber and also identified his automobile as the getaway car. No weapon was ever found.
Shortly after the appellant was arrested and while he was being taken back to the service station, he volunteered, without being questioned, that he had been at the service station earlier and had purchased $2.00 worth of gas and a pack of cigarettes. He had been advised of his rights pursuant toMiranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966), immediately after his arrest. The appellant does not question the voluntariness of this statement. The officers could not find any cigarettes in the appellant's automobile.
After the appellant was transported to the police station, he was questioned by Detective Alex Smith. Prior to questioning, he was read again his Miranda rights. He acknowledged that he understood those rights; he signed a written waiver of the rights; and he consented to give a statement. He was not under the influence of alcohol or drugs. Upon being advised by Smith that he would be searched, the appellant stated, "I might as well give it to you." Whereupon, he produced, from the crotch of his pants, the seventeen $10 bills that had been taken from the service station. The appellant made a statement describing his involvement in the robbery. Smith reduced his statement to writing, and the appellant signed it. In the statement, the appellant admitted going into the service station, putting his hand under his shirt to make it appear that he had a gun, demanding money, receiving the $10 bills, and running from the station.
The appellant testified before the jury that he had a gambling problem; that, on the night of the robbery, he took money which belonged to his wife and was to be used to purchase milk and diapers for their baby and to pay their electric utility bill; that he went to the racetrack and gambled it away; that he was disturbed about losing the money and what his wife would do when she discovered it was gone; that he went by the service station to purchase gasoline and cigarettes; that, when the attendant was making change, he asked for the money; and that, after the attendant gave him the money, he ran out of the store and drove away. He denied having his hand under his shirt, having a gun, and threatening to shoot the attendant. He further testified that, shortly after leaving the station, he had a change of heart. He testified that, when he realized that what he had done was wrong, he turned around and started back to return the money, but that, upon hearing the police sirens, he changed his mind and attempted to flee.
The appellant contends that the trial court committed reversible error in overruling his objection to the admission of his extrajudicial confession to the crime charged. He argues that the confession was rendered involuntary, during the interrogation, by Detective Smith's telling him that it would be "for the best" to make a statement. There was no pretrial determination of the admissibility of the confession, but during the trial when the confession was offered by the state, the trial court conducted a hearing out of the presence of the jury to determine its admissibility of the jury. At this hearing, the appellant testified that, prior to his giving the statement, Detective Smith told him that, if he made a statement admitting the taking of the money, he would be charged with a lesser degree of robbery because he did not have a gun and the money had been recovered. *Page 291 
He also testified that Smith told him that he would probably get probation and that, if he cooperated and made a statement, it would be "for the best" and a "lot easier on him." He stated that he made the statement because of these promises.
The record in reference to the testimony of Detective Smith is, in pertinent part, as follows:
 "THE COURT: Did you offer the defendant any reward or hope of reward or did you make these statements to him he said you did?
"THE WITNESS [Smith]: No, sir.
 "THE COURT: And you're saying you did not tell him that —
 "THE WITNESS: No, sir. I did tell him that if he would tell the truth it would be for the best, but I did not promise him anything or any hope of reward.
 "THE COURT: Did you tell him he would get a lighter sentence —
"THE WITNESS: No, sir.
"THE COURT: — or probation or any other favor?
 "THE WITNESS: I told him it was not up to me to determine the degree of the charge.
". . . .
 "Q. [Defense counsel on cross-examination]: You told him it was for the best. What do you mean?
 "A. [Smith]: Exactly what I said. It was for the best.
". . . .
"Q. What do you mean for the best?
 "A. What I meant was if he showed remorse rather than coming in here and acting like — like he was not guilty of a crime it would be better.
". . . .
 "Q. I'll ask you one more time: What exactly did you mean by 'for the best'?
". . . .
 "A. That if he was remorseful that it would be to his benefit.
". . . .
"Q. Lesser included offenses were never discussed?
 "A. I told him that I could make a decision as far as the degree of the robbery."
We begin our analysis of the appellant's issue with consideration of the following principles:
 "The true test of voluntariness of extra-judicial confessions is whether, under all the surrounding circumstances, they have been induced by a threat or a promise, express or implied, operating to produce in the mind of the prisoner apprehension of harm or hope of favor; and if so, whether true or false, such confessions must be excluded from the consideration of the jury as having been procured by undue influence."
Guenther v. State, 282 Ala. 620, 623, 213 So.2d 679, 681
(1968), cert. denied, 393 U.S. 1107, 89 S.Ct. 916,21 L.Ed.2d 803 (1969). See also Ex parte McCary, 528 So.2d 1133
(Ala. 1988).
 "It has long been held, under the right against self-incrimination, that an involuntarily given confession or incriminating statement is not admissible in a subsequent criminal prosecution. A great variety of circumstances may cause a confession or incriminating statement to be classified as involuntary. The test applicable in both state and federal prosecutions is whether the confession was free and voluntary; that is, it must not have been extracted by any sort of threats or violence, nor obtained by direct or implied promises, however slight, nor by the exertion of any improper influence."
C. Gamble, McElroy's Alabama Evidence § 200.01 (3d ed. 1977) (footnotes omitted). Pursuant to Alabama law, a statement made subsequent to an arrest is prima facie involuntary and inadmissible at trial; thus, the state must prove that the statement was voluntarily made and must lay a Miranda predicate before the statement is admissible. Ex parte Weeks,531 So.2d 643 (Ala. 1988), cert. denied, 488 U.S. 851, 109 S.Ct. 135,102 L.Ed.2d 108 (1988); Thomas v. State, 373 So.2d 1167 (Ala. 1979), vacated on other grounds, 448 U.S. 903, *Page 292 100 S.Ct. 3043, 65 L.Ed.2d 1133 (1980); Lewis v. State, 295 Ala. 350,329 So.2d 599 (1976).
During the voir dire hearing on the admissibility of the confession, the appellant testified that Detective Smith promised him that, if he made a statement admitting to the commission of the crime, he would be charged with a lesser degree of robbery. Detective Smith's testimony in this regard was conflicting. In response to a question by the trial court, he testified that he told the appellant that he could not determine the degree of the charge, but on cross-examination he testified that he told the appellant that he could make a decision as to the degree of robbery charged. This conflict in Smith's testimony was not resolved. Our review of this evidence leads us to the conclusion that the state did not meet its burden of establishing that the confession was voluntary, and the appellant's objection to its admission should have been sustained.
The state argues in brief that we do not have to reach the issue of the voluntariness of the confession in this case, but should apply a harmless error analysis to its admission. It cites us to the recent decision of the United States Supreme Court in Arizona v. Fulminante, ___ U.S. ___, 111 S.Ct. 1246,113 L.Ed.2d 302 (1991), which holds that the admission of an involuntary confession is subject to harmless error analysis. We agree with the state that we should apply a harmless error analysis to its admission in this case. We think the instant facts present a classic case for the application of this rule.
In holding that the admission of an involuntary confession is subject to harmless error analysis, the Fulminante Court stated the following:
 "[T]he harmless-error doctrine is essential to preserve the 'principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error.' "
Id. at 1264 (quoting Delaware v. Van Arsdall, 475 U.S. 673,681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)). "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24,87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).
 "The admission of an involuntary confession is a 'trial error,' similar in both degree and kind to the erroneous admission of other types of evidence. . . . When reviewing the erroneous admission of an involuntary confession, the appellate court, as it does with the admission of other forms of improperly admitted evidence, simply reviews the remainder of the evidence against the defendant to determine whether the admission of the confession was harmless beyond a reasonable doubt."
Arizona v. Fulminante, ___ U.S. at ___, 111 S.Ct. at 1265.
In the instant case, the appellant was apprehended near the service station shortly after the robbery. He and his automobile fit the description given the police by the victim. When he was returned to the scene he was instantly and positively identified by the victim as the person who had robbed him. The money taken in the robbery was found in the crotch of his pants. Even without the confession, the evidence against him was overwhelming.
More importantly, however, the record discloses that the appellant's defense strategy was to admit taking the money and to try to explain his actions in such a manner as to persuade the jury that he did not have a gun, and that he did not intend to commit a robbery, or at least that he was not guilty of robbery in the first degree. While the opening statements to the jury are not included in the record, it can be discerned from the comments of the trial court and of defense counsel that the appellant admitted in his opening statement that he entered the station, asked for the money, and upon its being handed to him, fled the scene. Apparently, he also admitted in his opening statement that he had made a *Page 293 
statement to the police admitting that he had robbed the station. Thus, the appellant admitted to the jury his involvement in the incident and admitted, before the hearing on the voluntariness of the confession, that he had made an inculpatory statement. From this, it is obvious that his trial strategy of admitting his involvement and his testimony at trial attempting to explain away or mitigate his actions were not motivated or impelled by the admission of his confession. Under the circumstances, he took the only logical course he had to defend himself. In a measure, he was successful. Although the jury did not believe that he did not intend to rob the station, they must have believed that he did not have a gun or represent that he was armed, because they found him guilty of the lesser included offense of robbery in the third degree. His testimony to the effect that he did not intend to take the money but that it was just handed to him in response to a casual request and that the attendant willingly parted with it without feeling compelled to do so by the threat of the imminent use of force is incredible; however, the jury obviously believed his story that he was unarmed and that he made no representation that he was armed.
After reviewing the erroneous admission into evidence of the confession and considering particularly the effect that it may have had on the jury, in the light of all the other evidence, we are convinced that the admission of the confession was harmless beyond a reasonable doubt. We, as an appellate court, are mindful, in applying the harmless error rule here, that we should do so with extreme caution because of the well-known effect a confession has on a jury. See Arizona v. Fulminante, ___ U.S. at ___, 111 S.Ct. at 1258. The standard for reviewing the introduction of illegal evidence is not whether the evidence did influence the jury, but whether it might have influenced the jury in arriving at the verdict. Wilson v.State, 520 So.2d 205 (Ala.Cr.App. 1987); Ex parte Ward,497 So.2d 575 (Ala. 1986). Here, we are convinced that there is no possibility that the jury might have been influenced by the evidence of the confession and that no substantial right of the appellant has or probably has been adversely affected by the admission into evidence of the confession. Wilson v. State;
A.R.App.P. 45. This case is due to be, and it is hereby, affirmed.
AFFIRMED.
All Judges concur.